

Honorable Mike K. Nakagawa
United States Bankruptcy Judge

Entered on Docket
July 27, 2022

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

\* \* \* \* \* \*

| | |
|---|---|
| In re: | ) |
| | ) Case No.: 11-15010-MKN |
| TIMOTHY L. BLIXSETH, | ) Chapter 7 |
| | ) |
| Alleged Debtor. | ) |
| | ) |
| TIMOTHY L. BLIXSETH, | ) Adv. Proc. No.: 21-01274-MKN |
| | ) |
| Plaintiff, | ) |
| | ) Date:   April 6, 2022 |
| vs. | ) Time:  10:30 a.m. |
| | ) |
| MONTANA DEPARTMENT OF | ) |
| REVENUE, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**ORDER ON MONTANA DEPARTMENT OF REVENUE'S MOTION TO DISMISS ADVERSARY PROCEEDING[1]**

On April 6, 2022, the court heard the Montana Department of Revenue's Motion to Dismiss Adversary Proceeding ("Dismissal Motion"). The appearances of counsel were noted on the record. After arguments were presented, the matter was taken under submission.

---

[1] In this Order, all references to "ECF No." are to the documents filed in the above-captioned bankruptcy proceeding. All references to "AECF No." are to the documents filed in the above-captioned adversary proceeding. All references to "Section" or "§" are to provisions of the Bankruptcy Code, 11 U.S.C. § 101, et seq. All references to "Bankruptcy Rule" are to the Federal Rules of Bankruptcy Procedure. All references to "Civil Rule" are to the Federal Rules of Civil Procedure. All references to "FRE" are to the Federal Rules of Evidence.

# BACKGROUND[2]

On April 5, 2011 ("Petition Date"), the Montana Department of Revenue ("Montana"), joined by the Idaho State Tax Commission ("Idaho") and the California Franchise Tax Board ("California"), filed an involuntary Chapter 7 petition ("Involuntary Petition") against Timothy L. Blixseth, Alleged Debtor, commencing the above-captioned case ("Involuntary Proceeding"). (ECF No. 1). All three petitioning creditors asserted unsecured claims for unpaid taxes owing to their respective States, with $219,258.00 asserted by Montana, $1,117,914.00 asserted by Idaho, and $986,957.95 asserted by California.

On April 8, 2011, an Order to Show Cause Why Venue in this District is Proper and Why Transfer of Case is Not Appropriate ("OSC") was entered, setting an initial hearing date of April 22, 2011. (ECF No. 7).

On April 20, 2011, Idaho filed a notice of withdrawal from participation as a petitioning creditor. (ECF No. 20).

On April 20, 2011 the Alleged Debtor filed a response to the OSC that included a request to dismiss or abstain ("Dismissal Request"). (ECF No. 23). The Alleged Debtor's Dismissal Request also sought monetary sanctions against the petitioning creditors under Bankruptcy Rule 9011 and Section 303(i).

On April 20, 2011, California also filed a notice of withdrawal from participation as a petitioning creditor. (ECF No. 26).

On April 22, 2011, the initial hearing was held on the OSC by the assigned bankruptcy judge, Bruce A. Markell ("Judge Markell"), at which time the court engaged in the following colloquy with Montana Department of Revenue's counsel, Lynn Butler:

---

[2] Pursuant to FRE 201(b), the court takes judicial notice of all materials appearing on the dockets in the above-captioned bankruptcy case and adversary proceeding. See U.S. v. Wilson, 631 F.2d 118, 119 (9th Cir. 1980). See also Burbank-Glendale-Pasadena Airport Auth. v. City of Burbank, 136 F.3d 1360, 1364 (9th Cir. 1998) (taking judicial notice of court filings in a state court case where the same plaintiff asserted similar claims); Bank of Am., N.A. v. CD-04, Inc. (In re Owner Mgmt. Serv., LLC Trustee Corps.), 530 B.R. 711, 717 (Bankr. C.D. Cal. 2015) ("The Court may consider the records in this case, the underlying bankruptcy case and public records.").

THE COURT: -- as a preliminary matter. I saw in both the settlements with respect to the Idaho Taxation Department and the California Franchise Tax Board something that piqued my interest. I take it that all the petitioning creditors, even though they are soverigns [sic], they're waiving their sovereign immunity with respect to any liability they might have for this action, is that correct?

MR. BUTLER: To the extent that is consistent with the United States Supreme Court's rulings over the last couple of years --

***THE COURT: No, no. I don't want it consistent. I want explicit on the record that by coming into this court you are exposing yourself to anything this Court might have to remedy anything that the Bankruptcy Court says needs to be remedied.***

***MR. BUTLER: I believe that's a correct summation of the law, that the courts -- the three state agencies have voluntarily submitted themselves to the jurisdiction of this Court.***

***THE COURT: All right. And I will tell you, I don't -- I have no idea if we will get there, although I saw that -- I saw obviously there was a waiver with respect to respect [sic] to the Franchise Tax Board and -- or a release with respect to the Franchise Tax Board -- I know from the debtor, but I also saw a request from the Debtor for 303(i) damages, and I just want to clear up front that it is my view at this point that, as you have stated, by commencing an action in this Court, not only have they submitted to the jurisdiction of this Court, but they have waived whatever sovereign immunity they might have with respect to damages, fines or penalties that might accrue because of the actions taken in this Court.***

***MR. BUTLER: I believe that's correct, Your Honor.***

THE COURT: Yeah. Thank you.

MR. BUTLER: The - - and - -

THE COURT: Sorry to start you off - -

MR. BUTLER: No, no.

THE COURT: - - on such an - -

MR. BUTLER: That's okay.

THE COURT: - - odd tone, but I just want - -

MR. BUTLER.: No, it's - -

THE COURT: I have learned dealing with states - -

MR. BUTLER: Yes, Your Honor.

THE COURT: - - it's good to be explicit.

MR. BUTLER: And let me just - - let me correct something. I don't want this to - - it's - - it's the 11th amendment issue that we're dealing with.

THE COURT:  Yeah.

MR. BUTLER:  Yeah, okay. Sovereign immunity, there's a whole dispute over which one's which. I didn't want you to think that I was hiding the ball on that one. We are waiting - -

THE COURT:   Well, let's be clear. I mean - -

MR. BUTLER:  Yes.

THE COURT:  - - again, I mean there's 11th amendment which I'm not even sure applies necessarily to a state - -

MR. BUTLER: Yes, Your Honor.

THE COURT: - -  that commences an action. I'm actually talking about sovereign immunity - -

MR. BUTLER: Yes, Your Honor.

THE COURT:  - - as well.

MR. BUTLER: I believe so, Your Honor.

THE COURT: All right. Thank you.

MR. BUTLER: The - - again - - -

THE COURT: <u>Alden v. Maine</u> and all that sort of stuff.

MR. BUTLER: Exactly.  And then - -

THE COURT: Right.

MR. BUTLER: - - quite frankly, the Supreme Court has pretty well nailed that issue shut over the last six years or so.

(ECF No. 50 at 4:24-7:18) (emphasis added).  The OSC hearing was continued to May 18, 2011.

On April 27, 2011, the Alleged Debtor filed a motion under Bankruptcy Rule 9011 for sanctions to be awarded against Montana and its agents and attorneys.  (ECF No. 55).  The motion was set to be heard at the same time as the continued OSC hearing.

On May 5, 2011, a motion for relief from stay was filed by the Yellowstone Club Liquidating Trustee ("YCLT") to allow it to proceed with the various appellate matters related to separate bankruptcy proceedings arising out of the United States Bankruptcy Court for the District of Montana ("YCLT RAS Motion").  (ECF No. 82).  That motion was noticed to be heard on June 7, 2011.  (ECF No. 83).

4

On May 8, 2011, the continued OSC hearing was conducted.  After consideration of the evidence and arguments presented, Judge Markell orally ruled that the Alleged Debtor's principal assets, consisting of intangible interests in two Nevada limited liability companies, are not located in Nevada, but at the place of the Alleged Debtor's undisputed residence in the State of Washington.  As a result, the court concluded that the Involuntary Proceeding should be dismissed for lack of venue.  The court also concluded that jurisdiction should be retained to consider the issuance of sanctions against the petitioning creditors and their representatives.[3]

On May 27 2011, Judge Markell entered an "Order Dismissing Involuntary Petition Against Alleged Debtor Timothy L. Blixseth" that incorporated by reference his oral rulings issued at the OSC hearing ("First Dismissal Order").  (ECF No. 122).  In light of the dismissal, the court also concluded that Alleged Debtor's Dismissal Request was moot as well as the YCLT RAS Motion.  That order reserved jurisdiction over the Alleged Debtor's sanction requests and directed the filing of renewed motions.

On June 10, 2011, Montana appealed the First Dismissal Order to the Bankruptcy Appellate Panel for the Ninth Circuit ("BAP").  (ECF No. 146).[4]

On June 30, 2011, Judge Markell entered an order denying Montana's request for a stay pending its appeal of the First Dismissal Order.  (ECF No. 186).

On July 19, 2011, however, the BAP entered an order granting Montana's request for a stay pending appeal of the First Dismissal Order.  (ECF No. 236).  Later the same day, this bankruptcy court entered an "Order Regarding Stay Pending Appeal."  (ECF No. 237).  That order stated, *inter alia*, that "[g]iven the stay pending appeal issued by the Bankruptcy Appellate Panel, all hearings in this case are hereby taken off calendar, and the parties are ordered to hold in abeyance all discovery.  No new motions of any type may be filed without the prior

---

[3] A transcript of the continued OSC hearing ("OSC Transcript") was filed on May 24, 2011.  (ECF No. 120).

[4] In his oral ruling on the OSC, Judge Markell noted that both Idaho and California had filed withdrawals from participation in the case *nunc pro tunc* to the Petition Date, but that no order approving the withdrawals had been entered.  See OSC Transcript at 55:7-13.  The court also noted that Montana was the only petitioner actively participating in response to the OSC.

1  permission of the Bankruptcy Appellate Panel confirming that its stay does not prohibit the filing

2  and prosecution of such motions.  If, or when, the stay is dissolved or appropriately modified, the

3  court will hold a status conference to assess what action should then be taken."

4      On December 17, 2012, a divided three-judge panel of the BAP entered an Opinion

5  reversing the First Dismissal Order.  (ECF No. 250).  The majority concluded that the Alleged

6  Debtor's intangible interests in the two Nevada limited liability companies were located in

7  Nevada and venue in Nevada therefore was proper.  The dissent agreed with Judge Markell that

8  the Alleged Debtor's interest in those assets are general intangibles that are located for venue

9  purposes at the Alleged Debtor's place of residence in the State of Washington.

10     On December 18, 2012, the bankruptcy court entered an Order Setting Scheduling

11  Conference.  (ECF No. 251).  The order directed Montana, Idaho, California, and the Alleged

12  Debtor to appear for a scheduling conference.

13     On January 11, 2013, after the scheduling conference was conducted, a Scheduling Order

14  was entered.  (ECF No. 256).

15     On January 18, 2013, the Alleged Debtor filed a Renewed Motion to Dismiss Involuntary

16  Case ("Second Dismissal Motion").  (ECF No. 261).  The Alleged Debtor asserted that it had

17  more than 12 creditors and that the Involuntary Petition no longer had at least 3 petitioning

18  creditors as required by section 303(b)(1).

19     On January 23, 2013, pursuant to the Scheduling Order, Montana and the Alleged Debtor

20  filed a Joint Discovery Plan regarding the Second Dismissal Motion.  (ECF No. 265).  That

21  discovery plan provided deadlines for expedited discovery to be conducted, including production

22  of documents, deposition of witnesses, issuance of subpoenas, and the like.  It further provided

23  deadlines for the submission of witness declarations, excerpts of deposition transcripts, witness

24  lists, exhibit lists, and trial stipulations.  The Joint Discovery Plan was approved by a court order

25  entered on January 24, 2013.  (ECF No. 266).

26      On January 25, 2013, an amendment to the Joint Discovery Plan was submitted by

27  Montana and the Alleged Debtor.  (ECF No. 270).  The amended Joint Discovery Plan was

28

approved by court order that set the trial of the Second Dismissal Motion for February 27, 2013. (ECF No. 271).

On February 1, 2013, an order was entered vacating the hearing on the Second Dismissal Motion as well as the discovery deadlines. (ECF No. 283).

On March 15, 2013, the bankruptcy court entered another Order Setting Scheduling Conference. (ECF No. 294). The order directed Montana and the Alleged Debtor to appear for a scheduling conference to be held on March 25, 2013.

On March 22, 2013, Montana filed a motion to abate further proceedings on the Second Dismissal Motion to allow "global mediation" to be pursued. (ECF No. 297).

On March 25, 2013, the court conducted the scheduling conference at which time a two-day trial on the Second Dismissal Motion was set for June 13 and 14, 2013. The court directed counsel for Montana and the Alleged Debtor to submit a related scheduling order.

On March 28, 2013, a further amended Joint Discovery Plan was submitted by Montana and the Alleged Debtor. (ECF No. 306). The further amended Joint Discovery Plan specifically provided that the Second Dismissal Motion would "be limited to contested issues under 11 U.S.C. § 303(b)" and that "[d]iscovery and trial on the Motion shall be limited as such and, therefore, will not encompass contested issues under 11 U.S.C. § 303(h), (i), (k) and F.R.B.P. 9011." Joint Discovery Plan at ¶ 3. It also scheduled a pretrial conference to be held on May 28, 2013.

On April 2, 2013, the Alleged Debtor filed an amendment to the Second Dismissal Motion as permitted by the further amended Joint Discovery Plan. (ECF No. 309).

On April 9, 2013, an order was entered approving the further amended Joint Discovery Plan, including the agreed terms and deadlines specified therein. (ECF No. 313).

On April 17, 2013, Montana filed a notice of deposition and subpoena duces tecum with respect to the California Franchise Tax Board. (ECF No. 330).

On May 6, 2013, Montana filed an amended notice of deposition and subpoena duces tecum with respect to Michael J. Flynn. (ECF No. 350).

On May 8, 2013, Brian A. Glasser, as Trustee of the YCLT, filed a "Notice of Joinder in Involuntary Petition" pursuant to which the YCLT joined the Involuntary Petition. (ECF No. 359). YCLT asserted an unsecured claim in the amount of $40,992,210.81 based on a judgment previously entered by the bankruptcy court in Montana.

On May 13, 2013, Montana filed notices of deposition and subpoena duces tecum with respect to the California Franchise Tax Board as well as with respect to the Idaho State Tax Commission. (ECF Nos. 367 and 370).

On May 14, 2013, the Alleged Debtor filed a notice of deposition and notice of subpoena with respect to the California Franchise Tax Board (ECF Nos. 376 and 377), as well as with respect to the Idaho State Tax Commission. (ECF Nos. 378 and 379). The following day, the Alleged Debtor filed the amended notices of subpoena with respect to both entities. (ECF No. 383 and 384).

On May 16, 2013, a Second Amended Joint Discovery Plan was submitted by Montana and the Alleged Debtor. (ECF No. 390). The amended discovery plan specifically provided that the Second Dismissal Motion would "be limited to contested issues under 11 U.S.C. § 303(b)" and that "[d]iscovery and trial on the Motion shall be limited as such and, therefore, will not encompass contested issues under 11 U.S.C. § 303(h), (i), (k) and F.R.B.P. 9011." Second Amended Joint Discovery Plan at ¶ 3. Attached to the amendment were preliminary witness lists from both Montana and the Alleged Debtor that included unnamed representatives from Idaho and California.

On May 20, 2013, the Alleged Debtor filed an amended notice of subpoena and amended notice of deposition of Todd Bailey of the California Franchise Tax Board. (ECF Nos. 400 and 401).

On May 22, 2013, an order was entered approving the Second Amended Joint Discovery Plan. (ECF No. 413).

On May 28, 2013, a pretrial conference was conducted confirming the June 13 and 14, 2013, trial dates.

On June 4, 2013, a Third Amended Joint Discovery Plan was filed. (ECF No. 465). The amended discovery plan set specific deadlines for certain depositions to be taken, as well as to exchange copies of all declarations, excerpts of deposition transcripts and exhibits to be used at trial. The further amended discovery plan specifically provided that the Second Dismissal Motion would "be limited to contested issues under 11 U.S.C. § 303(b)" and that "[d]iscovery and trial on the Motion shall be limited as such and, therefore will not encompass contested issues under 11 U.S.C. § 303(h), (i), (k) and F.R.B.P. 9011." Third Amended Joint Discovery Plan at ¶ 3. Attached to the Third Amended Joint Discovery Plan were preliminary witness lists from both Montana and the Alleged Debtor, which included the Alleged Debtor and unnamed representatives from Idaho and California. Also included on the witness lists were individuals named Mike Flynn ("Flynn"), Spencer Marks ("Marks"), Kim Davis ("Davis"), and Pete Donnelly ("Donnelly").

On June 6, 2013, an order was entered approving the Third Amended Joint Discovery Plan. (ECF No. 472).

On June 11, 2013, counsel for the Alleged Debtor and counsel for Montana filed a Joint Statement of Evidentiary Objections and Responses Thereto ("Joint Evidentiary Objections"). (ECF No. 490). Among other items, the Alleged Debtor and Montana objected to their respective designations and counter-designations of the deposition testimony of Patrick Fox, (California Franchise Tax Board Representative) Laura Shuck, Joel Silverman, Dan Bucks, and a representative of the Idaho State Tax Commission. See Joint Evidentiary Objections at Tables 8, 9, 10, 11, 12, 13, 14, and 15.

On June 13 and June 14, 2013, Judge Markell conducted a trial on the Second Dismissal Motion at which testimony was presented by multiple witnesses and more than 200 exhibits were offered into evidence.[5] After the conclusion of the trial, the court scheduled closing arguments

---

[5] Transcripts of the trial on the Second Dismissal Motion ("Trial Transcripts") were filed on June 20 and 21, 2013. (ECF Nos. 496, 497, 498, 499, and 504). The Trial Transcripts include the live trial testimony of the Alleged Debtor, Flynn, Marks, Donnelly, and Davis, as well as individuals named Jerry Keller ("Keller") and Thomas Morrison ("Morrison"). Flynn testified as an attorney who consulted with the Alleged Debtor's representatives who had

for July 5, 2013, with final evidentiary rulings to be issued prior to submission of post-trial briefs.

On July 2, 2013, Judge Markell entered omnibus rulings on the parties' evidentiary objections raised before and during trial, including those set forth in the Joint Evidentiary Objections.  (ECF No. 512).

On July 3, 2013, post-trial closing briefs were filed by the Alleged Debtor and by Montana.  (ECF Nos. 515 and 516).

On July 5, 2013, closing arguments were presented by counsel and the Second Dismissal Motion was taken under submission.[6]

On July 10, 2013, Judge Markell entered an "Order Granting Motion to Dismiss Involuntary Case" ("Second Dismissal Order").  (ECF No. 528).  The court found that the Alleged Debtor had at least 12 creditors as of the date of the Involuntary Petition and concluded that the petition therefore must be supported by at least 3 qualifying creditors under Section 303(b)(1).  See Second Dismissal Order at 5:9 to 9:2.  The court further held that if any amount of a petitioning creditor's claim is subject to a bona fide dispute, the creditor is disqualified from filing or joining in an involuntary petition under Section 303(b).  Id. at 9:3 to 14:2.  Based on the evidence presented, Judge Markell found that Idaho's claim was subject to bona fide dispute because its acceptance of a discounted settlement inferred the petitioning creditor's own concerns about the Alleged Debtor's liability.  Id. at 14:4-15.  The court also found that California's claim was subject to bona fide dispute because the settlement of its claim required the existence of a good faith dispute to serve as consideration for an enforceable settlement

negotiated settlements with Idaho and California.  Marks, Donnelly, Davis, and Keller testified as current or former employees with the Montana Department of Revenue.  Direct testimony declarations from Flynn, Marks, Donnelly, Davis, and Keller were admitted into evidence, subject to the court's subsequent rulings on the Joint Evidentiary Objections.  The Alleged Debtor, Flynn, Marks, Donnelly, Davis, and Keller were subject to cross-examination at trial.  Morrison was offered by Montana as a percipient witness and as an expert witness, but the court sustained the Alleged Debtor's objection to his testimony in both capacities.

[6] A transcript of the closing arguments on the Second Dismissal Motion was filed on July 8, 2013.  (ECF No. 525).

agreement.  Id. at 14:16 to 15:3.  Judge Markell concluded that because the claims of both Idaho

and California were subject to bona fide dispute, both were disqualified as petitioning creditors.

Id. at 15:4-6.  The court further concluded that YCLT qualified as a creditor that joined in the

petition under Section 303(c) notwithstanding a possible contingency or dispute as to its claim.

Id. at 15:7 to 16:8.  Finally, Judge Markell found that at least part of Montana's claim was

subject to bona fide dispute as to liability and amount, thereby disqualifying Montana from being

a petitioning creditor.  Id. at 16:9 to 17:12.  Because the Involuntary Petition was not filed or

joined by at least 3 qualifying creditors as required by Section 303(b), Judge Markell concluded

that the requirements for involuntary bankruptcy relief had not been met and therefore granted

the Second Dismissal Motion.[7]

On July 22, 2013, Montana filed a notice of appeal with respect to the Second Dismissal

Order.  (ECF No. 541).

On July 23, 2013, the Alleged Debtor filed an election to have the appeal heard by the

United States District Court for the District of Nevada ("USDC") rather than the BAP.  (ECF No.

549).  As a result of that election, Montana's appeal of the Second Dismissal Order was

transferred to the USDC, assigned to Judge Jennifer Dorsey ("USDC Judge Dorsey"), and

denominated Case No. 2:13-cv-01324-JAD ("USDC Appeal").[8]  (USDC ECF No. 4).[9]

On July 24, 2013, the Alleged Debtor filed "Timothy L. Blixseth's Motion for Judgment

and for Costs and Fees Pursuant to 11 U.S.C. §§ 105 and 303(i)(1)" pursuant to which the

---

[7] Judge Markell having found that the Alleged Debtor had 12 or more creditors, Section 303(b)(2) would not have applied to allow YCLT alone to file an involuntary petition, even if its claim was not subject to bona fide dispute as to liability or amount.

[8] Where necessary, "USDC ECF No." will be used in this Order to identify documents filed in the USDC Appeal.

[9] Excerpts of the record on appeal were filed with the USDC on August 21, 2014 ("USDC Record").  (USDC ECF No. 58).  Copies of the declarations of certain witnesses who testified at trial, see note 5, supra, were included in the USDC Record.  (USDC ECF No. 58-11, MER01439 to MER01476).  Copies of the exhibits admitted at trial also were included in the USDC Record.

Alleged Debtor requested sanctions against Montana and the YCLT ("303(i)(1) Motion").  (ECF No. 554).

On August 5, 2013, the Alleged Debtor filed a cross-appeal of the Second Dismissal Order "with respect to the Bankruptcy Court's ruling regarding the claim of" the YCLT.  (ECF Nos. 566 and 568).  On that same day, an election was filed to have the cross-appeal heard by the USDC.  (ECF No. 569).

On August 7, 2013, the cross-appeal was referred to the USDC.  (ECF No. 575).

On August 9, 2013, Montana filed in the Bankruptcy Court "Petitioning Creditor Montana Department of Revenue's Motion for Stay Pending Appeal" ("Stay Motion").  (ECF No. 583).

On August 15, 2013, the Alleged Debtor filed an objection to the Stay Motion (ECF No. 592) and a supplemental objection on August 30, 2013 (ECF No. 612).

On September 6, 2013, Montana filed a reply in support of the Stay Motion.  (ECF No. 621).

On September 13, 2013, Bankruptcy Judge William T. Thurman ("Judge Thurman") presided over a hearing on the Stay Motion.  At the conclusion of the parties' arguments, Judge Thurman issued his oral findings of fact and conclusions of law granting the Stay Motion in light of, among other reasons, the "irreparable harm" that Montana could suffer if the Alleged Debtor was allowed to continue seeking discovery of privileged material in furtherance of the 303(i)(1) Motion.[10]

On September 20, 2013, Judge Thurman entered an "Order Granting a Stay of Proceedings Pending Appeal" ("Stay Order") pursuant to which he stayed "all 11 U.S.C. § 303(i) and other post-dismissal proceedings against Montana, pending final resolution of the appeals by Montana and Mr. Blixseth" of the Second Dismissal Order.  (ECF No. 635).  The Stay Order does not expressly reference the Alleged Debtor's cross-appeal or otherwise mention the YCLT.

_____

[10] A transcript of the hearing before Judge Thurman was filed on September 18, 2013. (ECF No. 631).

On October 2, 2013, the Alleged Debtor filed "Timothy L. Blixseth's Motion Pursuant to Fed. R. Bankr. P. 9023 and Fed. R. Civ. P. 59(e) to Amend Order Granting a Stay of Proceedings Pending Appeal" ("Reconsideration Motion").  (ECF No. 638).  By the Reconsideration Motion, the Alleged Debtor asked the bankruptcy court to lift the stay and authorize him to continue prosecuting the 303(i)(1) Motion, including authorizing him to continue conducting discovery.

On October 23, 2013, Montana filed an objection to the Reconsideration Motion.  (ECF No. 648).

On October 30, 2013, the Alleged Debtor filed a reply in support of the Reconsideration Motion.  (ECF No. 651).

On November 6, 2013, Judge Thurman presided over a hearing on the Reconsideration Motion.  At the conclusion of the parties' arguments, Judge Thurman issued his oral findings of fact and conclusions of law denying the Reconsideration Motion.

On November 12, 2013, Judge Thurman incorporated his oral findings of fact and conclusions of law made at the November 6 hearing into an order denying the Reconsideration Motion ("Reconsideration Order").  (ECF No. 653).

On April 19, 2017, approximately three and a half years after Judge Thurman's entry of the Reconsideration Order, the Alleged Debtor filed a motion in the bankruptcy court seeking a variety of relief, including to lift the Stay Order previously entered in the case, to enter sanctions against Montana for various alleged misconduct, and for a protective order ("Sanctions Motion").  (ECF No. 673).  On the same date, the Alleged Debtor filed a separate motion in the bankruptcy court requesting the YCLT successor trustee to show cause whether he has preserved or destroyed evidence ("OSC Motion").  (ECF No. 674).

On September 12, 2017, the bankruptcy court heard the Alleged Debtor's Sanctions Motion as well as his OSC Motion, and took them under submission.

On December 15, 2017, USDC Judge Dorsey entered her decision affirming the Second Dismissal Order ("USDC Decision").  (USDC ECF No. 87).  The USDC agreed that the Alleged

Debtor had more than 11 creditors and that there were not at least three qualifying creditors. USDC Judge Dorsey therefore affirmed the Second Dismissal Order.

On December 20, 2017, the bankruptcy court entered an order denying the Sanctions Motion.  (ECF No. 728).  On the same date, the bankruptcy court entered an order denying the OSC Motion.  (ECF No. 730).

On January 11, 2018, Montana appealed the USDC Decision to the United States Court of Appeals for the Ninth Circuit ("Ninth Circuit").[11]  (USDC ECF No. 88).

On March 6, 2018, YCLT filed a notice of withdrawal from participation as a petitioning creditor in the Involuntary Proceeding.  (ECF No. 737).

On November 26, 2019, the Ninth Circuit entered its Opinion affirming in part and remanding in part to the bankruptcy court.  See State of Montana Dep't of Revenue v. Blixseth, 942 F.3d 1179 (9th Cir. 2019).  Agreeing with Judge Markell and USDC Judge Dorsey, the circuit panel held that "a creditor whose claim is the subject of a bona fide dispute lacks standing to serve as a petitioning creditor under § 303(b)(1) even if a portion of the claim amount is undisputed."  Id. at 1186.  The circuit panel also agreed that "on the petition date, the vast majority of [Montana's] claim remained disputed. As a result, [Montana's] claim was the subject of a bona fide dispute as to amount."  Id. at 1187.  The panel's decision then concluded as follows: "[Montana] also disputes whether Idaho, California, and [YCLT]'s claims may sustain the petition individually or in combination.  We do not reach these issues because all other petitioning creditors have withdrawn their participation in the underlying bankruptcy proceeding. Instead, we remand for the bankruptcy court to determine whether this matter should be dismissed for want of prosecution consistent with 11 U.S.C. § 303(j)(3)."  Id.

On January 6, 2020, the Ninth Circuit entered its order denying the Alleged Debtor's petition for rehearing.  (9th ECF No. 52).

On January 14, 2020, the Ninth Circuit entered its mandate.  (9th ECF No. 53).

---

[11] Where necessary, "9th ECF No." will be used in this Order to identify documents filed in the proceedings before the Ninth Circuit.

On February 19, 2020, the USDC entered the "Order on Mandate," where in the matter was remanded to the Bankruptcy Court for "further proceedings consistent with the Ninth Circuit's instructions." (USDC ECF No. 94).

On August 10, 2020, the Alleged Debtor filed and served a request for a status conference and noticed the matter to be heard by the bankruptcy court on September 16, 2020. (ECF Nos. 757 and 758).

On September 11, 2020, Montana filed and served a "Position Paper." (ECF No. 764).

On September 16, 2020, counsel for the Alleged Debtor and counsel for Montana appeared at the status conference at which time the bankruptcy court set deadlines for both parties to file motions in accordance with the instructions from the Ninth Circuit. The motions were ordered to be heard concurrently on November 13, 2020.[12]

On October 9, 2020, Montana filed and served a Motion for Relief from Judgment ("Relief Motion") along with a separate memorandum in support thereof. (ECF Nos. 770 and 771). Pursuant to the Relief Motion, Montana asked the court to reconsider the Second Dismissal Order.

On October 9, 2020, the Alleged Debtor filed and served the Motion Confirming Dismissal of Involuntary Petition, or, in the Alternative, Motion to Dismiss Involuntary Petition for Want of Prosecution Pursuant to 11 U.S.C. § 303(j) ("303(j) Motion"). (ECF No. 772).

On October 14, 2020, the Alleged Debtor also filed and served a Motion to Strike Montana Department of Revenue's Motion for Relief from Judgment ("Strike Motion"). (ECF Nos. 774 and 775).

On June 3, 2021, the court entered orders denying the Relief Motion, denying the Strike Motion, and granting the 303(j) Motion. (ECF Nos. 825, 827, and 828). In its order granting the 303(j) Motion ("303(j) Order"), the court recognized that "dismissal of an involuntary proceeding is a necessary predicate to the Alleged Debtor seeking sanctions under Section

---

[12] An order incorporating the briefing and hearing schedule was entered on October 15, 2020. (ECF No. 776). Notice of entry of the order was served on all creditors and parties in interest. (ECF No. 778).

303(i)" and ordered "that jurisdiction of this court is reserved with respects to claims, if any, brought under 11 U.S.C. § 303(i)."

On June 21, 2021, the involuntary bankruptcy case was closed. (ECF No. 834).

On December 23, 2021, the Alleged Debtor instituted the above-captioned adversary proceeding by filing a complaint ("Complaint") against Montana alleging three claims:

> Count I – Judgment Against Defendant MDOR for Reasonable Costs and Attorney's Fees Pursuant to 11 U.S.C. § 303(i)(1)(A)–(B)
>
> Count II – Judgment Against Defendant MDOR That it Commenced the Involuntary Proceeding in Bad Faith, Damages Proximately Caused by Defendant MDOR's Bad Faith Bankruptcy Filing, and Punitive Damages Pursuant to 11 U.S.C. § 303(i)(2)(A)–(B).
>
> Count III – Judgment Against Counsel[13] for Petitioner for Sanction Pursuant to Fed. R. Bankr. P. 9011(b)–(c)

(AECF No. 1).

On January 25, 2022, Montana filed the instant Dismissal Motion. (AECF No. 6).

On February 23, 2022, Alleged Debtor filed his opposition ("Opposition") to the Dismissal Motion. (AECF No. 9).

On March 2, 2022, Montana filed its reply ("Reply") to the Alleged Debtor's Opposition. (AECF No. 10).

## DISCUSSION

Montana seeks to dismiss[14] the Complaint "based upon this Court's lack of personal jurisdiction pursuant to the Eleventh Amendment to the Constitution, U.S. Const. Amend. XI and Rule 12(b)(2) of the Federal Rules of Civil Procedure." Dismissal Motion at 1:23-25. In his Opposition, the Alleged Debtor responds that Montana has waived sovereign immunity.

### I.    **Legal Standards.**

---

[13] The court observes that Montana's counsel is not named as a defendant in the complaint.

[14] Count 3 of the Complaint is asserted against Montana's counsel, and not Montana. Therefore, the court interprets the Dismissal Motion as applying only to Counts 1 and 2 of the Complaint.

Civil Rule 12(b)(2), made applicable herein pursuant to Bankruptcy Rule 7012, authorizes a court to dismiss a complaint based on "lack of personal jurisdiction."  FED. R. CIV. P. 12(b)(2); FED. R. BANKR. P. 7012.  The court may consider facts outside the complaint to resolve a jurisdictional dispute under Civil Rule 12(b)(2).  See CMB Infrastructure Group IX, LP v. Cobra Energy Inv. Fin., Inc. 2021 WL 5304175, at *4 n.55 (D. Nev. Nov. 15, 2021) citing Argueta v. Banco Mexicano, S.A., 87 F.3d 320, 324 (9th Cir. 1996).

Section 303(i) states:

> (i) If the court dismisses a petition under this section other than on consent of all petitioners and the debtor, and if the debtor does not waive the right to judgment under this subsection, the court may grant judgment—
>
>> (1) against the petitioners and in favor of the debtor for—
>>
>>> (A) costs; or
>>>
>>> (B) a reasonable attorney's fee; or
>>
>> (2) against any petitioner that filed the petition in bad faith, for—
>>
>>> (A) any damages proximately caused by such filing; or
>>>
>>> (B) punitive damages.

11 U.S.C. § 303(i)(1)-(2).

The Eleventh Amendment to the U.S. Constitution states:

> The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state.

U.S. CONST. amend. XI.  As explained by the Ninth Circuit,

> "Under the Eleventh Amendment, a state is immune from suit under state or federal law by private parties in federal court absent a valid abrogation of that immunity or an express waiver by the state." *Mitchell v. Franchise Tax Bd. (In re Mitchell)*, 209 F.3d 1111, 1115–16 (9th Cir.2000).  That immunity applies to state agencies as well. *Id.* at 1116 n. 1.  A state may waive its immunity if it voluntarily invokes the jurisdiction of a federal court or if it makes a "clear declaration" that it intends to submit itself to federal court jurisdiction. *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 675–76, 119 S.Ct. 2219, 144 L.Ed.2d 605 (1999) (citations omitted).

17

In the bankruptcy context, the Supreme Court has held that a state, by filing a proof of claim, waives its sovereign immunity with respect to adjudication of that claim:

> It is traditional bankruptcy law that he who invokes the aid of the bankruptcy court by offering a proof of claim and demanding its allowance must abide the consequences of that procedure. [Citation omitted.] ... When the State becomes the actor and files a claim against the fund, it waives any immunity which it otherwise might have had respecting the adjudication of the claim.

*Gardner v. New Jersey*, 329 U.S. 565, 573–74, 67 S.Ct. 467, 91 L.Ed. 504 (1947). Accordingly, we have held that, when a state files a proof of claim for unpaid tax debts, it waives its sovereign immunity with respect to a court's determination that those debts are dischargeable. *See Cal. Franchise Tax Bd. v. Jackson (In re Jackson)*, 184 F.3d 1046, 1049 (9th Cir.1999).

The scope of the waiver is not limited to adjudication of the proof of claim. "[W]hen a state or an 'arm of the state' files a proof of claim in a bankruptcy proceeding, the state waives its Eleventh Amendment immunity with regard to the bankruptcy estate's claims that arise from the same transaction or occurrence as the state's claim." *Lazar*, 237 F.3d at 978. …

To determine whether the "same transaction or occurrence" requirement is met, we apply the "logical relationship" test delineated in *Pinkstaff v. United States (In re Pinkstaff)*, 974 F.2d 113 (9th Cir.1992):

> A logical relationship exists when the counterclaim arises from the same aggregate set of operative facts as the initial claim, in that the same operative facts serve as the basis of both claims or the aggregate core of facts upon which the claim rests activates additional legal rights otherwise dormant in the defendant.

[*Schulman v. Cal. (In re*] *Lazar*[)], 237 F.3d at 979 (quoting *Pinkstaff*, 974 F.2d at 115).

State Bd. of Equalization v. Harleston (In re Harleston), 331 F.3d 699, 701–02 (9th Cir. 2003).[15]

---

[15] In State of Montana v. Pegasus Gold Corp. (In re Pegasus Gold Corp.), 394 F.3d 1189 (9th Cir. 2005), a voluntary Chapter 11 proceeding was commenced by a Nevada corporation wherein the State of Montana filed proofs of claim. After a liquidating Chapter 11 plan was confirmed a dispute arose between a newly created entity and the State of Montana. The newly created entity and the trustee of the Chapter 11 liquidating trust then commenced an adversary proceeding against the State of Montana in the bankruptcy court alleging a breach of certain postpetition agreements. Those agreements, however, required the parties to arbitrate their disputes or to resolve them in Montana state courts applying Montana law. Under the

Section 106 of the Bankruptcy Code states, in pertinent part, as follows:

> (a) Notwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit[16] to the extent set forth in this section with respect to the following:
>
> > (1) Sections 105, 106, 107, 108, **303**, 346, 362, 363, 364, 365, 366, 502, 503, 505, 506, 510, 522, 523, 524, 525, 542, 543, 544, 545, 546, 547, 548, 549, 550, 551, 552, 553, 722, 724, 726, 744, 749, 764, 901, 922, 926, 928, 929, 944, 1107, 1141, 1142, 1143, 1146, 1201, 1203, 1205, 1206, 1227, 1231, 1301, 1303, 1305, and 1327 of this title.
> >
> > (2) The court may hear and determine any issue arising with respect to the application of such sections to governmental units.
> >
> > (3) The court may issue against a governmental unit an order, process, or judgment under such sections or the Federal Rules of Bankruptcy Procedure, <u>including an order or judgment awarding a money recovery, but not including an award of punitive damages</u>.[17] Such order or judgment for costs or fees under this title or the Federal Rules of Bankruptcy Procedure against any governmental unit shall be consistent with the provisions and limitations of section 2412(d)(2)(A) of title 28.

---

circumstances, the Ninth Circuit concluded that Montana had not waived its immunity under the Eleventh Amendment by filing a proof of claim in the voluntary Chapter 11 proceeding. Dismissal of the adversary proceeding for lack of jurisdiction therefore was required.  By contrast, the State of Montana in the present case initiated the involuntary Chapter 7 proceedings by which the Alleged Debtor's non-exempt assets would be administered for the payment of claims against the Alleged Debtor.

[16]  Section 101(27) defines a "governmental unit" as follows:

> (27) The term "governmental unit" means United States; State; Commonwealth; District; Territory; municipality; foreign state; department, agency, or instrumentality of the United States (but not a United States trustee while serving as a trustee in a case under this title), a State, a Commonwealth, a District, a Territory, a municipality, or a foreign state; or other foreign or domestic government.

11 U.S.C. § 101(27).  Montana does not dispute that it is a "governmental unit" as defined under Section 101(27).

[17]  The Complaint seeks an award of punitive damages, which may be inappropriate under Section 106(a)(3).  However, the amount and scope of damages are not the subject of the instant Dismissal Motion or this order, and Montana's arguments in its Reply regarding its potential liability are not addressed herein.

19

11 U.S.C. § 106(a)(1)-(3) (emphasis added).[18]

## II.    **Analysis.**

In its Reply, Montana concedes that it voluntarily waived its Eleventh Amendment immunity, though it classifies its waiver as "limited" based on the following arguments:

> Montana is not disputing that a limited, voluntary waiver of its Eleventh Amendment immunity occurred with the filing of the Involuntary Petition. The basis for Montana's participation in the Bankruptcy Case was in its capacity as a creditor asserting a claim for $219,258.00 against Mr. Blixseth for unpaid state taxes. In this Adversary Proceeding, Mr. Blixseth attempts to assert affirmative claims against Montana under Bankruptcy Code § 303(i), a proceeding distinct and separate from the prior § 303(b) proceeding. Moreover the § 303(b) proceeding necessarily had to be dismissed before any proceeding under § 303(i) could even exist, further indicating the distinction between the filing of the Involuntary Case and Adversary Proceeding.

> Montana invoked federal jurisdiction by asserting its tax claim against Mr. Blixseth through the mechanism of an involuntary bankruptcy filing. That action submitted Montana's claim to the federal court for adjudication. Montana did not instigate the § 303(i) proceeding and has not consented to it. Further, during the case, Montana made statements in the record of the Court that it will assert its Eleventh Amendment immunity and now does so.

Reply at 2:13-26.  The court disagrees with Montana's implicit contention that its alleged "limited" waiver does not extend to the Alleged Debtor's current claims for relief under Section 303(i).

First, Montana voluntarily invoked the jurisdiction of this court by filing the Involuntary Petition and, as reflected by the extensive history previously recited, has expended substantial time and effort to keep the Involuntary Proceeding alive.  Montana's voluntary actions constitute a clear and unequivocal waiver of its immunity under the Eleventh Amendment,[19] and Section

---

[18] Compare Central Virginia Community College v. Katz, 546 U.S. 356, 379 (2006) (bankruptcy clause under Art. I, § 8, cl. 4 authorizes Congress to enact uniform bankruptcy laws, including waiver of State sovereign immunity for avoidance of preferential transfers).

[19] Compare Lapides v. Board of Regents of University System of Georgia, 535 U.S. 613 (2002) (by voluntarily removing litigation to federal court, Georgia waived Eleventh Amendment immunity from federal court adjudication of state law claims against state entity).

106(a)(1) unambiguously provides that this waiver extends to Section 303(i).  To put it another

way, the "logical relationship" test, to the extent applicable, is easily satisfied.

Second, the following colloquy on April 11, 2011, between Judge Markell and Montana's

counsel, Mr. Butler (who continues to represent Montana in this matter) further reflects

Montana's clear and unequivocal waiver of its sovereign immunity under the Eleventh

Amendment regarding any future Section 303(i) claims:

> THE COURT: No, no. I don't want it consistent. I want explicit on the record that by coming into this court you are exposing yourself to anything this Court might have to remedy anything that the Bankruptcy Court says needs to be remedied.

> MR. BUTLER: I believe that's a correct summation of the law, that the courts -- the three state agencies have voluntarily submitted themselves to the jurisdiction of this Court.

> THE COURT: All right.  And I will tell you, I don't -- I have no idea if we will get there, although I saw that -- I saw obviously there was a waiver with respect to respect [sic] to the Franchise Tax Board and -- or a release with respect to the Franchise Tax Board -- I know from the debtor, but I also saw a request from the Debtor for 303(i) damages, and I just want to clear up front that it is my view at this point that, as you have stated, by commencing an action in this Court, not only have they submitted to the jurisdiction of this Court, but they have waived whatever sovereign immunity they might have with respect to damages, fines or penalties that might accrue because of the actions taken in this Court.

> MR. BUTLER: I believe that's correct, Your Honor.

(ECF No. 50 at 5:9-6:5).

Finally, contrary to Montana's implicit arguments to the contrary, the court did not lose

jurisdiction over this matter simply because the underlying bankruptcy case was dismissed:

> Bankruptcy jurisdiction is governed by statute.  28 U.S.C. § 1334. That jurisdiction is not limited, relinquished, or otherwise affected by the closing or reopening of a bankruptcy case.  *See, e .g., Menk v. Lapaglia (In re Menk )*, 241 B.R. 896, 906 (9th Cir.BAP1999) "[T]here is no jurisdictional requirement that a closed bankruptcy case be reopened before 'arising under' jurisdiction can be exercised to determine whether a particular debt is excepted from discharge."); *Koehler v. Grant*, 213 B.R. 567, 569 (8th Cir.BAP1997) ("The court's jurisdiction does not end once a plan is confirmed or the case is closed.").

In re Reynolds, 2014 WL 5325749, at *3 (Bankr. C.D. Cal. Oct. 20, 2014).  Indeed, in its 303(j) Order, the court recognized that "dismissal of an involuntary proceeding is a necessary predicate to the Alleged Debtor seeking sanctions under Section 303(i)" and ordered "that jurisdiction of this court is reserved with respects to claims, if any, brought under 11 U.S.C. § 303(i)." Montana also recognizes that dismissal of the Involuntary Proceeding was a condition precedent to the Alleged Debtor's pursuit of sanctions under Section 303(i), though it confusingly argues that this factual and legal circumstance "indicat[es] the distinction between the filing of the Involuntary Case and Adversary Proceeding."  See Reply at 2:18-21.  In essence, therefore, Montana (a) concedes that it waived sovereign immunity based on its filing of the Involuntary Proceeding, (b) does not dispute its waiver of sovereign immunity under Section 106(a)(1), (c) recognizes that the Alleged Debtor could not have pursued Section 303(i) damages until after the Involuntary Proceeding was dismissed, but (d) then conveniently claims that upon dismissal, it retains the right to assert sovereign immunity in response to a Section 303(i) claim because the bankruptcy court's in rem jurisdiction concluded upon the dismissal of the Involuntary Proceeding.  Montana is wrong.

"11 U.S.C. § 303(i) provides the exclusive cause of action for damages predicated upon the filing of an involuntary bankruptcy petition."  Miles v. Okun (In re Miles), 430 F.3d 1083, 1091 (9th Cir. 2005).  A Section 303(i) action is ancillary to the bankruptcy court's in rem jurisdiction and is designed to "deter misuse of the bankruptcy process…."  Id. at 1089.  See also Slayton v. White (In re Slayton), 409 B.R. 897, 903-04 (Bankr. N.D. Ill. 2009) ("The discharge is a fundamental in rem feature of bankruptcy by which the states are bound. … Injunctive relief, damages, and attorneys' fees, though seemingly in personam remedies, are ancillary to the Slaytons' in rem proceeding because those remedies serve as mechanisms for enforcement of the discharge.").  To accept Montana's argument would be to impermissibly read Section 106(a)(1) out of the Code, which the Ninth Circuit has deemed to be improper:

> [T]he interpretation offered by the government would essentially nullify Section 106(a)(1)'s effect on Section 544(b)(1), an interpretation we should avoid.  See, e.g., United States v. Powell, 6 F.3d 611, 614 (9th Cir. 1993) ("It is a basic rule of statutory

construction that one provision should not be interpreted in a way which is internally contradictory or that renders other provisions of the same statute inconsistent or meaningless." (internal quotation marks and citation omission)).

Zazzali v. U.S. (In re DBSI, Inc.), 869 F.3d 1004, 1011 (9th Cir. 2017). Montana, therefore, is not entitled to immunity under the Eleventh Amendment except as to any request in the Complaint for punitive damages which is expressly prohibited under Section 106(a)(3).

**IT IS THEREFORE ORDERED** that the Montana Department of Revenue's Motion to Dismiss Adversary Proceeding, Adversary Docket No. 6, be, and the same hereby is, **GRANTED IN PART AND DENIED IN PART**. Specifically, the court grants the Dismissal Motion to the extent it seeks to dismiss any claim for punitive damages based on immunity under the Eleventh Amendment and denies the Dismissal Motion in all other respects.

Copies sent via CM/ECF ELECTRONIC FILING

Copy sent via BNC to:
TIMOTHY L BLIXSETH
1605 73RD AVE., NE
MEDINA, WA 98039-2330

# # #