**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| In re:  TIMOTHY L. BLIXSETH, | No. 22-60046 |
| *Debtor*, | BAP No. 22-1160 |
| ------------------------------ | |
| STATE OF MONTANA DEPARTMENT OF REVENUE, | OPINION |
| *Appellant*, | |
| v. | |
| TIMOTHY L. BLIXSETH, | |
| *Appellee*. | |

Appeal from the Ninth Circuit
Bankruptcy Appellate Panel
Lafferty III, Taylor, and Gan, Bankruptcy Judges, Presiding

Argued and Submitted January 10, 2024
Pasadena, California

Filed August 14, 2024

2          STATE OF MT DEPT OF REVENUE V. BLIXSETH

Before:  Johnnie B. Rawlinson, Michael J. Melloy,[*] and
         Holly A. Thomas, Circuit Judges.

Opinion by Judge Rawlinson

**SUMMARY**[**]

**Bankruptcy**

The panel reversed (1) the Bankruptcy Appellate Panel's order dismissing an interlocutory appeal and (2) the bankruptcy court's order denying the State of Montana Department of Revenue's motion to dismiss an adversary proceeding brought by Timothy Blixseth under 11 U.S.C. § 303(i) for costs and damages arising out of the State's involuntary petition filed against Blixseth under 11 U.S.C. § 303(b)(1).

The panel held that the BAP and this court had jurisdiction under the collateral order doctrine to review the bankruptcy court's order denying the State's sovereign immunity.

The panel held that the bankruptcy court erred in concluding that the State was not entitled to sovereign immunity in Blixseth's adversary proceeding. First, the State did not voluntarily invoke the jurisdiction of the

---

[*] The Honorable Michael J. Melloy, United States Circuit Judge for the U.S. Court of Appeals for the Eighth Circuit, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

bankruptcy court and waive its sovereign immunity by filing the involuntary petition under § 303(b)(1).

Second, the State's counsel did not waive sovereign immunity because counsel did not make a clear and unequivocal statement of waiver.

Third, 11 U.S.C. § 106, addressing sovereign immunity in a § 303(b) proceeding, is an unconstitutional assertion of Congress's power and therefore did not support the bankruptcy court's ruling. The panel therefore turned to the analysis set forth in *Central Va. Cmty. Coll. v. Katz*, 546 U.S. 356 (2006), to determine whether the State was entitled to sovereign immunity. *Katz* held that the states agreed in the plan of the Constitutional Convention of 1787 not to assert any sovereign immunity defense that they might have had in bankruptcy proceedings, but this agreement was limited to proceedings necessary to effectuate the core *in rem* jurisdiction of the bankruptcy courts and orders ancillary to their *in rem* jurisdiction. The panel agreed with the Third and Eleventh Circuits that the critical functions delineated in *Katz* provide useful guidelines for discerning whether an adversary proceeding qualifies as a proceeding necessary to effectuate the *in rem* jurisdiction of the bankruptcy courts. Applying these guidelines, the panel concluded that the adversary proceeding brought by Blixseth was not necessary to effectuate the jurisdiction of the bankruptcy court in this case because § 303(i) creates a remedial scheme that is markedly distinct from the first two critical functions described in *Katz*: a bankruptcy court's exercise of exclusive jurisdiction over all of the debtor's property and the equitable distribution of the property among the debtor's creditors. The panel concluded that a proceeding brought under § 303(i) also does not further the third critical function: the ultimate discharge that gives the debtor a fresh

4          STATE OF MT DEPT OF REVENUE V. BLIXSETH

start. The panel therefore reversed the bankruptcy court's denial of sovereign immunity and remanded with instructions to dismiss Blixseth's § 303(i) claim against the State as barred by sovereign immunity.

## COUNSEL

Daniel Solomon (argued), Husch Blackwell LLP, Washington, D.C.; Lynn H. Butler, Husch Blackwell LLP, Austin, Texas; Ogonna M. Brown, Lewis Roca Rothberger Christie LLP, Las Vegas, Nevada; for Appellant.

Nathan A. Schultz (argued), Law Office of Nathan A. Schultz PC, Traverse City, Michigan; Brett A. Axelrod, Fox Rothschild LLP, Las Vegas, Nevada; for Appellee.

## OPINION

RAWLINSON, Circuit Judge:

The State of Montana Department of Revenue (State) brings an interlocutory appeal of the bankruptcy court's decision denying the State's motion to dismiss an action brought by Timothy Blixseth under 11 U.S.C. § 303(i)[1] for costs and damages arising out of the State's involuntary petition filed against Blixseth under 11 U.S.C. § 303(b)(1).[2]

We have jurisdiction under 28 U.S.C. §§ 158(d)(1). We review decisions of the Bankruptcy Appellate Panel (BAP) and questions of sovereign immunity *de novo*. *See Leslie v. Mihranian (In re Mihranian)*, 937 F.3d 1214, 1216 (9th Cir. BAP 2019); *see also Miller v. Wright*, 705 F.3d 919, 923 (9th Cir. 2013), *as amended* (sovereign immunity). Because we

---

[1] 11 U.S.C. § 303(i) provides that:

> If the court dismisses a petition under this section other than on consent of all petitioners and the debtor, and if the debtor does not waive the right to judgment under this subsection, the court may grant judgment-- (1) against the petitioners and in favor of the debtor for-- (A) costs; or (B) a reasonable attorney's fee; or (2) against any petitioner that filed the petition in bad faith, for-- (A) any damages proximately caused by such filing; or (B) punitive damages.

[2] 11 U.S.C. § 303(b) provides that:

> An involuntary case against a person is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title-- (1) by three or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability or the subject of a bona fide dispute as to liability or amount . . .

conclude that sovereign immunity shields the State from Blixseth's action, we reverse the BAP decision denying sovereign immunity to the State.

**I. Background**

Following an audit of Blixseth and his business entities, the State of Montana Department of Revenue, Idaho State Tax Commission, and California Franchise Tax Board filed an involuntary bankruptcy petition against Blixseth for unpaid taxes. *See Montana Dept. of Revenue v. Blixseth*, 942 F.3d 1179, 1181-82 (9th Cir. 2019). The Yellowstone Club Liquidating Trust subsequently joined the action. *See id.* at 1182. After the Idaho State Tax Commission and California Franchise Tax Board settled with Blixseth, they withdrew as petitioning creditors. *See id.* The bankruptcy court then granted summary judgment in favor of Blixseth, finding that because the State's claim was the subject of a bona fide dispute as to the amount of liability, the State lacked standing to pursue the claim in bankruptcy court, and the petition could not be sustained based on the existence of only one remaining petitioning creditor (the Yellowstone Liquidating Trust). *See id.* at 1182-83.

The State appealed the bankruptcy court's decision to the district court, which affirmed. *See id.* at 1183. On appeal to this court, we also affirmed, agreeing that the State lacked standing as a petitioning creditor because its claim was subject to a bona fide dispute. *See id.* at 1187. On remand, the bankruptcy court dismissed the involuntary petition for want of prosecution.

During the pendency of the involuntary petition, the bankruptcy court held a hearing during which the parties discussed sovereign immunity. The following colloquy

STATE OF MT DEPT OF REVENUE V. BLIXSETH                7

between the bankruptcy court and MDOR's counsel occurred:

> COURT:      [A]s a preliminary matter.  I saw in both the settlements with respect to the Idaho Taxation Department and The California Franchise Tax Board something that piqued my interest.  I take it that all the petitioning creditors, even though they are sovereigns, they're waiving their sovereign immunity with respect to any liability they might have for this action, is that correct?

> COUNSEL:    To the extent that is consistent with the United States Supreme Court's rulings over the last couple of years—

> COURT:      No, No. I don't want it consistent. I want explicit on the record that by coming into this court you are exposing yourself to anything this Court might have to remedy [sic] anything that the Bankruptcy Court says needs to be remedied.

> COUNSEL:    I believe that's a correct summation of the law, that the courts—the three state agencies have voluntarily submitted themselves to the jurisdiction of this court.

8          STATE OF MT DEPT OF REVENUE V. BLIXSETH

COURT:     All right. And I will tell you, I
           don't—I have no idea if we will get
           there, although I saw that—I saw
           obviously there was a waiver with
           respect to . . . the Franchise Tax
           Board—I know from the debtor,
           but I also saw a request from the
           Debtor for 303(i) damages, and I
           just want to clear up front that it is
           my view at this point that, as you
           have stated, by commencing an
           action in this court, not only have
           they submitted to the jurisdiction
           of this Court, but they have waived
           whatever sovereign immunity they
           might have with respect to
           damages, fines, or penalties that
           might accrue because of actions
           taken in this Court.

COUNSEL: I believe that's correct, Your
         Honor.

Blixseth subsequently brought an adversary proceeding
against the State under § 303(i) seeking attorneys' fees and
costs, proximate and punitive damages, and sanctions
against counsel. The State moved to dismiss, asserting
sovereign immunity. The bankruptcy court concluded that
the State was not immune from liability. First, the
bankruptcy court found that the State "voluntarily invoked
the jurisdiction of [the bankruptcy] court by filing the
[i]nvoluntary [p]etition." Next, the bankruptcy court
concluded that the State's counsel "clear[ly] and
unequivocal[ly] waive[d] [the State's] sovereign immunity

STATE OF MT DEPT OF REVENUE V. BLIXSETH          9

under the Eleventh Amendment regarding any future Section 303(i) claims." Finally, the bankruptcy court found that an action under § 303(i) "is ancillary to the bankruptcy court's *in rem* jurisdiction" and that, "[t]o accept [the State's] argument would be to impermissibly read Section 106(a)(1) out of the [Bankruptcy] Code."

The State appealed the bankruptcy court's decision to the BAP, which dismissed the appeal on the ground that the collateral order doctrine did not apply.

## II. Jurisdiction

Citing *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 546 (1949), the BAP summarily concluded that the collateral order doctrine did not apply because the bankruptcy court's decision did not fit into "the small class which finally determine[s] claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated."

Normally, appeals under 28 U.S.C. § 158(d) are from "final decisions, judgments, orders, and decrees" of a district court or of the BAP. However, a case that is still ongoing may be appealed if the case finally determines a claim or claims collateral to claims asserted in the underlying action and the collateral claims are "too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Cohen*, 337 U.S. at 546. This doctrine is commonly referred to as the "collateral order doctrine." *See Security Pac. Bank Wash. v. Steinberg* (*In re Westwood Shake & Shingle, Inc.*), 971 F.2d 387, 390 (9th Cir. 1992) (applying the collateral order doctrine to appeals brought

under 28 U.S.C. § 158(d)). "To come within the small class [described in] *Cohen*, the order [being appealed] must [1] conclusively determine the disputed question, [2] resolve an important issue completely separate from the merits of the action, and [3] be effectively unreviewable on appeal from a final judgment." *Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993) (citation, alteration, and internal quotation marks omitted).

Both the United States Supreme Court and this court have applied *Cohen* and concluded that denials of sovereign immunity are immediately appealable under the collateral order doctrine. *See id.*; *see also Childs v. San Diego Family Hous. LLC*, 22 F.4th 1092, 1095-96 & n.2 (9th Cir. 2022) (same). Consequently, the BAP ruling that the State's appeal did not fit within the collateral order doctrine was erroneous.

## III. Discussion

### A. Ground One - Voluntary Invocation of Jurisdiction

The bankruptcy court ruled that the State "voluntarily invoked the jurisdiction" of the bankruptcy court and waived its sovereign immunity by filing the involuntary petition, summarily concluding that "the logical relationship test [for compulsory counterclaims], to the extent applicable, is easily satisfied."

"It is traditional bankruptcy law that he who invokes the aid of the bankruptcy court *by offering a proof of claim and demanding its allowance* must abide by the consequences of that procedure. . . ." *Gardner v. New Jersey*, 329 U.S. 565, 573 (1947) (citation omitted) (emphasis added). "When the State becomes the actor and *files a claim against the [res]* it

waives any immunity which it otherwise might have had respecting the adjudication of the claim." *Id.* at 574 (citations omitted) (emphasis added). "*[W]hen a state or an 'arm of the state' files a proof of claim in a bankruptcy proceeding*, the state waives its Eleventh Amendment immunity with regard to the bankruptcy estate's claims that arise from the same transaction or occurrence as the state's claim. . . ." *Lazar v. California (In re Lazar)*, 237 F.3d 967, 978 (9th Cir. 2001) (emphasis added).

The State never filed a proof of claim, so any litigation waiver must be predicated upon the existence of a claim arising out of the adversary proceeding brought by the State. *See id.* "To determine whether a claim against the state arises out of the 'same transaction or occurrence' as the state's proof of claim," thereby overcoming sovereign immunity, "we apply the 'logical relationship' test for compulsory counterclaims." *Montana v. Goldin (In re Pegasus Gold Corp.)*, 394 F.3d 1189, 1195-96 (9th Cir. 2005) (internal quotation marks omitted). Under that test,

> [a] logical relationship exists when the counterclaim arises from the same aggregate set of operative facts as the initial claim, in that the same operative facts serve as the basis of both claims or the aggregate core of facts upon which the claim rests activates additional legal rights otherwise dormant in the defendant.

*Id.* (citation omitted).

We are not persuaded, however, that a § 303(i) claim is the equivalent of a compulsory counterclaim when an involuntary petition is filed under § 303(b) because, much

like a common law malicious prosecution claim, a claim filed under § 303(i) cannot arise out of the same factual predicate that supports a § 303(b) claim. *See Hydranautics v. FilmTec Corp.*, 70 F.3d 533, 537 (9th Cir. 1995) ("[A] malicious prosecution claim cannot be asserted as a counterclaim to the original suit which furnishes its predicate. . . .") (citation omitted). A § 303(i) claim arises from the fact of the filing of an involuntary petition under § 303(b), and therefore cannot satisfy the logical relationship test as a matter of law. *See* 11 U.S.C. § 303(i) (conditioning award of costs, fees, and damages on "the court dismiss[ing] a petition under this section other than on consent of all petitioners and the debtor"). Such an action is not a permissible "counterclaim to the original [involuntary petition] which furnishes its predicate." *Hydranautics*, 70 F.3d at 537.

Nor are we inclined to conclude that sanctions imposed under Rule 11 are a more apt analogy. Indeed, we have held that "§ 303(i) is a fee-shifting provision rather than a sanctions statute" and we have "contrast[ed]" § 303(i) with Rule 11. *Orange Blossom Ltd. P'ship v. S. Cal. Subelt Devs., Inc. (In re S. Cal. Sunbelt Devs., Inc.)*, 608 F.3d 456, 462 (9th Cir. 2010). Specifically, we observed that "[l]ike other fee shifting provisions, and in contrast to Rule 11, eligibility for fees [under § 303(i)] turns on the merits of the litigation as a whole, rather than on whether a specific filing is well founded." *Id.* (internal quotation marks omitted).

Blixseth's allegations fail the logical relationship test in any event because Blixseth's claim does not arise from the same "aggregate set of operative facts" as the State's involuntary petition. *In re Pegasus Gold Corp.*, 394 F.3d at 1195-96. The States's involuntary petition alleged a debt of unpaid taxes from an improper tax deduction. In contrast,

Blixseth sought relief based on the consequences of having to defend against the petition, rather than claims arising from the factual predicate of his alleged tax deficiency. *See id.*

### B. Ground Two - Counsel's Waiver of Sovereign Immunity

"Generally, [a court] will find a waiver [of sovereign immunity] . . . if the State makes a clear declaration that it intends to submit itself to [the court's] jurisdiction." *College Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 675-76 (1999) (citations and internal quotation marks omitted). A "state's consent to suit," however, "must be unequivocally expressed." *Id.* at 676 (citation and internal quotation marks omitted). "[T]he 'unequivocal expression' of elimination of sovereign immunity that [the Supreme Court] insist[s] upon is an expression in statutory text. . . ." *United States v. Nordic Vill., Inc.*, 503 U.S. 30, 37 (1992) (citation omitted). Thus, MDOR's counsel could not and did not effect an "unequivocal" waiver of MDOR's sovereign immunity through his statements to the court. *Id.*

### C. Ground Three - Ancillary Bankruptcy Jurisdiction (*Katz* Analysis)

"The text of Article I, § 8, cl. 4, of the Constitution . . . provides that Congress shall have the power to establish uniform Laws on the subject of Bankruptcies throughout the United States. . . ." *Central Va. Cmty. Coll. v. Katz*, 546 U.S. 356, 370 (2006) (internal quotation marks omitted). Pertinent to this appeal, Congress has established that:

> An involuntary case against a person is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of

14          STATE OF MT DEPT OF REVENUE V. BLIXSETH

this title . . . by three or more entities, each of
which is either a holder of a claim against
such person that is not contingent as to
liability or the subject of a bona fide dispute
as to liability or amount . . .

11 U.S.C. § 303(b)(1).

If the court dismisses a petition under this
section other than on consent of all
petitioners and the debtor, and if the debtor
does not waive the right to judgment under
this section, the court may grant judgment--
(1) against the petitioners and in favor of the
debtor for-- (A) costs; or (B) a reasonable
attorney's fee; or (2) against any petitioner
that filed the petition in bad faith, for--
(A) any damages proximately caused by such
filing; or (B) punitive damages.

11 U.S.C. § 303(i)(1)-(2).[3]

"Notwithstanding an assertion of sovereign immunity,
sovereign immunity is abrogated as to a governmental unit
to the extent set forth within this section with respect to . . .
[Section] 303 . . ." 11 U.S.C. § 106(a)(1).

In *Mitchell v. California Franchise Tax Board (In re
Mitchell)*, 209 F.3d 1111, 1120 (9th Cir. 2000), *abrogation
on other grounds recognized in Pistor v. Garcia*, 791 F.3d
1104, 1111 (9th Cir. 2015), we held that § 106(a) is "an

---

[3] This is the provision Blixseth used to support the claims in his adversary
proceeding against the State.

STATE OF MT DEPT OF REVENUE V. BLIXSETH          15

unconstitutional assertion of Congress's power."[4]  Thus, the bankruptcy court improperly relied on § 106(a) as a basis for ruling that the State waived its sovereign immunity.  *See id.*  Because § 106(a) does not support the bankruptcy court's ruling, we turn to the analysis set forth in *Katz* to determine whether the State is entitled to sovereign immunity.

In *Katz*, the Supreme Court held that Virginia institutions of higher education were "amenable" to "proceedings to recover preferential transfers."  546 U.S. at 379.  To reach this conclusion, the Court observed that "states agreed in the plan of the [Constitutional Convention of 1787] not to assert any sovereign immunity defense they might have had in proceedings brought pursuant to Laws on the subject of Bankruptcies."  *Id.* at 377 (citation and internal quotation marks omitted).  However, as the Supreme Court further explained, "[t]he scope of this consent was limited."  *Id.* at 378.  "In ratifying the Bankruptcy Clause, the States acquiesced in a subordination of whatever sovereign immunity they might otherwise have asserted in proceedings necessary to effectuate the *in rem* jurisdiction of the bankruptcy court."  *Id.* (footnote reference omitted).  This subordination also encompassed orders "ancillary to the bankruptcy courts' *in rem* jurisdiction."  *Id.* at 373.

The Court thus considered whether 11 U.S.C. § 550, the section under which the universities' sought "to avoid and

---

[4] *Hunsaker v. United States*, 902 F.3d 963 (9th Cir. 2018), does not negate our reasoning in *In re Mitchell*.  *Hunsaker* concerned federal sovereign immunity rather than State sovereign immunity under the Eleventh Amendment.  *See id.* at 967-68 (discussing the recovery of emotional distress damages against the federal government under a federal statute).  For the same reason, the bankruptcy court's reliance on *Zazzali v. United States (In re DBSI, Inc.)*, 869 F.3d 1004, 1011 (9th Cir. 2017), was misplaced.

recover alleged preferential transfers" to the universities, *id.* at 360, was within the scope of the States' consent given during the Constitutional Convention. In concluding that proceedings brought under § 550 were within the scope of the States' consent given during the Convention, the Court reasoned that "those who crafted the Bankruptcy Clause would have understood it to give Congress the power to authorize courts to avoid preferential transfers and to recover the transferred property." *Id.* at 372. The Court described the recovery of preferential transfers under § 550 as "a core aspect of the administration of bankrupt estates since at least the 18th century." *Id.*

Proceedings are at the "core" of a bankruptcy court's jurisdiction (*i.e.*, within its *in rem* jurisdiction) to which the States acquiesced insofar as they further the three "[c]ritical features of every bankruptcy proceeding" as set forth in *Katz*: "[1] the exercise of exclusive jurisdiction over all of the debtor's property, [2] the equitable distribution of that property among the debtor's creditors, and [3] the ultimate discharge that gives the debtor a 'fresh start' by releasing him, or her, or it from further liability for old debts." *Id.* at 363-64 (citation omitted); *see also id.* at 362 ("Bankruptcy jurisdiction, at its core, is *in rem*. . . .") (citation omitted).

In *Venoco LLC v. California (In re Venoco LLC)*, 998 F.3d 94, 99 (3d Cir. 2021), the Third Circuit "appl[ied] *Katz* to a bankruptcy adversary proceeding brought by a liquidating trustee for the debtors' assets." The trustee sought "compensation from the State of California and its Lands Commission for the alleged taking of a refinery that belonged to debtors." *Id.* The adversary proceeding was "primarily a claim for inverse condemnation, a cause of action against a governmental defendant to recover the value of property which has been taken in fact by the governmental

defendant." *Id.* at 100 (citation and internal quotation marks omitted).

In reaching its holding that the governmental defendants could not assert sovereign immunity, the Third Circuit concluded that the adversary proceeding furthered the first and second critical functions articulated in *Katz*. *See id.* at 106. The court explained that the adversary proceeding "further[ed] the Bankruptcy Court's exercise of jurisdiction over property of the Debtors and their estates," namely the refinery owned by the debtors. *Id.* The adversary proceeding also furthered the second critical function of "facilitating equitable distribution of the estate's assets." The Third Circuit observed that if the governmental defendants could assert sovereign immunity they would be able to recover from the Trust as creditors of the estate, while at the same time "preventing any judicial scrutiny over whether they [could] use the [refinery] without payment." *Id.* In addition, the governmental defendants "would improve their status vis-à-vis other creditors solely owing to their status as a state that can invoke sovereign immunity, just the kind of result *Katz* wanted to avoid." *Id.* (citation omitted).

In *State of Florida Dept. of Revenue v. Diaz (In re Diaz)*, 647 F.3d 1073, 1079 (11th Cir. 2011), the Eleventh Circuit held that sovereign immunity shielded the Florida Department of Revenue and the Virginia Department of Social Services from the debtor's motion for contempt and sanctions for violation of the automatic bankruptcy stay and related discharge injunction.

The Eleventh Circuit acknowledged that "[t]he automatic stay is a fundamental procedural mechanism in bankruptcy that allows the court to carry out" the first and

second critical functions identified in *Katz*, and was therefore necessary to effectuate the *in rem* functions of the bankruptcy court. *Id.* at 1085. However, the debtor did not file the contempt motion until four years after "the bankruptcy court had distributed the estate according to the Chapter 13 plan and entered a discharge order, which replaced the automatic stay with the discharge injunction." *Id.* at 1086. Because the contempt motion at that point no longer furthered the purpose of the bankruptcy stay, the Eleventh Circuit determined that the contempt motion "was filed too late to be considered essential to any *in rem* functions of the bankruptcy court." *Id.* The Eleventh Circuit concluded that "[t]he nexus between the [contempt] motion and the bankruptcy court's *in rem* jurisdiction [was] thus too remote to satisfy *Katz's* 'necessary to effectuate [the *in rem* jurisdiction of the bankruptcy court] standard.'" *Id.*

We agree with the Third and Eleventh Circuits that the critical functions delineated in *Katz* provide useful guidelines for discerning whether an adversary proceeding qualifies as a "proceeding[] necessary to effectuate the *in rem* jurisdiction of the bankruptcy courts." *Id.* (quoting *Katz*, 546 U.S. at 378). Applying these guidelines, we conclude that the adversary proceeding brought by Blixseth under § 303(i) was not "necessary to effectuate the jurisdiction of the bankruptcy court[]" in this case. *Id.* Section 303(i) creates a "remedial scheme" that "addresses . . . costs and attorneys' fees for dismissed involuntary petitions [and] compensatory and punitive damages for involuntary petitions filed in bad faith." *Miles v. Okun (In re Miles)*, 430 F.3d 1083, 1090 (9th Cir. 2005). This remedial function is markedly distinct from the first two critical functions described in *Katz*: a bankruptcy court's exercise of exclusive jurisdiction over all of the debtor's

property and the equitable distribution of that property among debtor's creditors. *See Katz*, 546 U.S. at 363-64.

Section 303(i) is also substantially different than § 550, the statute at issue in *Katz*, which "authorize[s] [bankruptcy] courts to avoid preferential transfers and to recover transferred property" that is part of the *res* of the bankruptcy estate. *Id.* at 372. As the Supreme Court explained, the authority "to avoid preferential transfers and to recover transferred property" of the estate "has been a core aspect of the administration of bankrupt estates since at least the 18th century." *Id.* (citations omitted). In contrast, an adversary proceeding brought under § 303(i) does not concern property in the *res* of the bankruptcy estate, but rather compensation for having been the subject of an unsuccessful involuntary petition that could have created a *res* but never did.

Neither does an adversary proceeding brought under § 303(i) further the third critical function, "the ultimate discharge that gives the debtor a fresh start by releasing him . . . from further liability for old debts." *Katz*, 546 U.S. at 364 (citation and internal quotation marks omitted). Blixseth does not seek a "fresh start" with regard to "old debts," but reimbursement of his costs incurred for undergoing bankruptcy proceedings. *Id.*

Denying sovereign immunity in this context could have the effect of subjecting a state to litigation merely because the state filed an involuntary bankruptcy petition. *See Katz*, 546 U.S. at 362-63 ("The . . . Bankruptcy Clause . . . was intended . . . to authorize *limited* subordination of state sovereign immunity in the bankruptcy arena.") (emphasis added). For these reasons, we conclude that the State's assertion of sovereign immunity under the Eleventh Amendment was properly invoked.

20          STATE OF MT DEPT OF REVENUE V. BLIXSETH

## IV. Conclusion

We have jurisdiction over this appeal under the collateral order doctrine. We are not persuaded that any of the grounds relied upon by the bankruptcy court to deny sovereign immunity to the State survive the *Katz* analysis. Rather, we conclude that under the reasoning and analysis in *Katz*, the State properly invoked sovereign immunity for Blixseth's claim brought under § 303(i).

We therefore reverse the BAP's order finding that the collateral order doctrine does not apply. We also reverse the bankruptcy court's denial of sovereign immunity, and remand with instructions to dismiss Blixseth's § 303(i) claim against the State as barred by sovereign immunity.

**REVERSED AND REMANDED with instructions.**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT



**FILED**

OCT 08 2024

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

In re: TIMOTHY L. BLIXSETH,

        Debtor,

------------------------------

STATE OF MONTANA
DEPARTMENT OF REVENUE,

        Appellant,

  v.

TIMOTHY L. BLIXSETH,

        Appellee.

No. 22-60046

BAP No. 22-1160
BAP, Las Vegas Bankruptcy Court

**MANDATE**

      The judgment of this Court, entered August 14, 2024, takes effect this date.

      This constitutes the formal mandate of this Court issued pursuant to Rule

41(a) of the Federal Rules of Appellate Procedure.

                        FOR THE COURT:

                        MOLLY C. DWYER
                        CLERK OF COURT